# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RICARDO ROBINSON,

      Petitioner,

                              CASE NO. 5:12-CV-11059

v.                              HONORABLE JOHN CORBETT O'MEARA

                              UNITED STATES DISTRICT JUDGE

KENNETH McKEE,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Ricardo Robinson, (Petitioner"), presently confined at the Macomb Correctional Facility in New Haven, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(a).  For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner pleaded guilty to the above charge in the Wayne County Circuit Court as part of a plea and sentencing bargain.  In exchange for his plea, the Wayne County Prosecutor agreed to dismiss two additional first-degree criminal sexual conduct charges and the supplemental information charging petitioner with being an habitual offender.  The parties further agreed that petitioner would be sentenced to fifteen to thirty years in

1

prison. (Tr. 1/29/2010, pp. 3, 6).  Prior to accepting petitioner's plea, the trial judge

advised petitioner of the constitutional rights to a trial that he would be relinquishing by

pleading guilty. (*Id.,* pp. 6-9).  In response to the judge's question, petitioner denied that

he had been forced or coerced into pleading guilty.  Petitioner further acknowledged that

he had a chance to discuss the plea agreement with his defense counsel and that he

wanted to plead guilty. (*Id.,* p. 9).  In making out a factual basis for the plea, petitioner

admitted that he had engaged in sexual intercourse with a girl under the age of thirteen.

(*Id.,* pp. 9-10).

Prior to sentencing, petitioner filed a *pro per* motion to withdraw his guilty plea,

which he argued on the day of sentencing. (Tr. 2/17/2010, p. 3).  In arguing his motion to

withdraw his plea, petitioner raised a number of complaints against his defense counsel.

The following exchange occurred between the judge and petitioner:

> DEFENDANT ROBINSON: Yes, sir. Your Honor, my attorney -- this Court
> hired an investigator to go out and talk to the witnesses and collect evidence.
> That investigator was given no discovery pack.
>
> THE COURT: Investigators don't get discovery packs, sir.
>
> DEFENDANT ROBINSON: But he came --
>
> THE COURT: Let's stop for a minute, okay.  Let's be realistic here.  You are
> charged with criminal sexual conduct.  In addition to what has been charged
> in this case, there were evidence of prior acts that would have been allowed in
> here in terms of what the law allows about other persons who you had some
> contact with of that nature.  All of that is the evidence in this case.  Now, you
> tell me, what is it about an investigator and a discovery pack that makes a
> difference in this?
>
> DEFENDANT ROBINSON: There was -- my attorney told me at the

2

preliminary hearing, the second date that we had there, that there was four sperms found, DNA sperms found, that those sperms are not mine. Those are not mine. Whose are they? Now I believe I just heard them say it had vanished, it is no more, it is gone. It was there but now it is not. Why is that?

THE COURT: Go ahead. Let me just hear what you have to say. Whatever you gave to the Court will be made a part of the record here, and I just want to give you a chance to make whatever statements you want to make about this for the record, Mr. Robinson.

DEFENDANT ROBINSON: Right. My attorney never helped me put together any kind of a case. She never came to see me, not one time did I see her.

THE COURT: You want me to believe that? I know Ms. Diallo better than that. I'm just going to shut up. Go ahead and say what you have to say.

DEFENDANT ROBINSON: Your Honor, I wish you would call the court or the jail over there and ask them do they have her on records coming to see me.

THE COURT: Sir, tell me this. I just can't avoid interrupting you. What was your defense in this case, that you didn't do this?

DEFENDANT ROBINSON: Yes.

THE COURT: After admitting to this Court that you did, and after three or four other people will say the same thing, that you did that to them.

DEFENDANT ROBINSON: They can say what they want to. I cannot stop them from saying what they are saying. I cannot stop them. I don't know how to, I don't know how to stop them.

THE COURT: Sir, I have given you a chance to speak. I am not going to grant your request to withdraw the plea in the case. I note that you filed a motion here. I make that part of the record in this case. And I know -- we pretty well know what the prosecution's evidence was in this particular case.

DEFENDANT ROBINSON: May I say one more thing, your Honor?

THE COURT: When we -- I take the time to make a record when a plea is entered and go through that entire process. We have some young people here who were scheduled to go and testify in this case, and I'm sure that they went

3

> through a whole lot and the prosecutor just to get them ready and get them here
> to testify.  There is so much that goes into getting a case ready for trial,
> particularly when you are involving some young folks here who have been
> sexually molested.  I'm not going to grant your request to withdraw the plea
> in this case.

(*Id.,* pp. 3-6).

Defense counsel indicated that petitioner had received his discovery packet at the

preliminary examination and that petitioner had been visited at the jail.  An investigator

went to the jail at her request to obtain information from petitioner.  Counsel informed the

judge that she had explained to petitioner the "viability or lack thereof" of his defense.

Counsel acknowledged that there was 404(b) evidence that would have been introduced

concerning petitioner's prior sexual assaults against his biological daughter. (*Id.,* p. 7).

Counsel then made the following remark:

> And I absolutely did tell Mr. Robinson that with the people that were lined up
> to testify against him, it did not look promising. I did say that to Mr. Robinson.
> But ultimately it was his decision to plea or not to plea. It is easier to blame the
> attorney than take responsibility.

(*Id.,* pp. 7-8).

The judge responded that he had "no question about your representing him and what

you have done in this case from my prior experience and contact with you." (*Id.,* p. 8).

Petitioner was ultimately sentenced to fifteen to thirty years in prison. (*Id.,* p. 23).

Petitioner's conviction was affirmed on appeal. *People v. Robinson,* No. 299444

(Mich.Ct.App. September 14, 2010); *lv. den.* 795 N.W. 2d 131 (Mich. 2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

4

I. Mr. Robinson asserts his constitutional right to a fair trial was denied by the court when, prior to sentencing, it failed to allow him to withdraw his plea. Mr. Robinson also asserts his plea was involuntarily entered because trial counsel was ineffective.

II. Due process requires re-sentencing where the court enhanced Mr. Robinson's sentence based on facts neither admitted by Mr. Robinson nor proven to a jury beyond a reasonable doubt. U.S. Const AM VI, XIV.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

5

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have

6

previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

In the present case, the Michigan Court of Appeals denied petitioner's application for leave to appeal in a form order "for lack of merit in the grounds presented." The Michigan Supreme Court subsequently denied petitioner leave to appeal in a standard form order without any extended discussion. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Harrington,* 131 S. Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still

7

must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, " it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id.* at 785.

In the present case, the AEDPA deferential standard of review applies to petitioner's case where the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, because these orders amounted to a decision on the merits. *See Werth v. Bell,* 692 F. 3d 486, 492-94 (6th Cir. 2012); *Hardaway v. Robinson*, 655 F.3d 445, 447, 449, n. 1 (6th Cir. 2011).

## III.  Discussion

### A.   Claim # 1. The involuntary guilty plea/ineffective assistance of counsel claims.

Petitioner first contends that he should have been permitted to withdraw his guilty plea because it was involuntarily made and because he was denied the effective assistance of counsel.

Initially, the Court observes that petitioner has no absolute right to withdraw his guilty plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748, 655 (E.D. Mich.

8

2005)(internal citations omitted). Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state trial court. *Id.*

A plea of guilty must be knowingly and voluntarily made. The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his guilty plea, as evidenced by the plea colloquy, is valid. *See Hastings v. Yukins,* 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002).

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-509 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or

9

his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id.* at 509 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).  A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Hastings,* 194 F. Supp. 2d at 669.

Petitioner is unable to show that his plea was involuntarily entered.  The trial judge on the record advised petitioner of the maximum penalty for the first-degree criminal sexual charge that he was pleading guilty to, the terms of the plea and sentencing agreement, and the trial rights that he would be relinquishing by pleading guilty.  The transcript clearly shows that petitioner's plea was voluntarily made. In addition, petitioner's claim that his counsel coerced him into pleading guilty is defeated by the fact that petitioner stated on the record at the plea hearing that no threats or coercion had been made to get him to plead guilty.  Petitioner's bare claim that he was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to the petitioner's statements during the plea colloquy, in which he denied that he had been coerced into pleading guilty. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750-51.  Petitioner has failed to show that his plea was involuntary.

Petitioner further claims that he was deprived of the effective assistance of trial counsel.

10

As an initial matter, most of petitioner's ineffective assistance of counsel claims involve alleged actions or omissions of counsel that took place prior to petitioner pleading guilty.  An unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *See also U.S. v. Martin,* 526 F. 3d 926, 932 (6th Cir. 2008).  Pre-plea claims of ineffective assistance of trial counsel are considered non-jurisdictional defects that are waived by a guilty plea. *See United States v. Stiger,* 20 Fed. Appx. 307, 309 (6th Cir. 2001); *See also Siebert v. Jackson,* 205 F. Supp. 2d 727, 733-34 (E.D. Mich. 2002)(habeas petitioner's claims regarding alleged deprivations of his constitutional rights that occurred before his guilty plea, as a result of his trial counsel's alleged ineffective assistance, were foreclosed by his guilty plea, where he stated at plea that he was satisfied with counsel's representation, and he did not complain of counsel's advice concerning plea agreement). Petitioner's plea of guilty forecloses any challenges to any pre-plea claims of ineffective assistance of counsel.

Petitioner further claims that trial counsel was ineffective in advising him to plead guilty.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the

11

defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S.

12

Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court

has even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).

Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a

*Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of

a state court conviction, "[A] state court must be granted a deference and latitude that are

not in operation when the case involves review under the *Strickland* standard

itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an

easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether counsel' s actions
> were reasonable.  The question is whether there is any reasonable
> argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

> Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to

cast doubt on a case that took place" almost three years ago "is precisely what *Strickland*

and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

> The Supreme Court has noted that:

> Acknowledging guilt and accepting responsibility by an early plea respond
> to certain basic premises in the law and its function.  Those principles are
> eroded if a guilty plea is too easily set aside based on facts and circumstances
> not apparent to a competent attorney when actions and advice leading to the
> plea took place.  Plea bargains are the result of complex negotiations suffused

13

with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore,* 131 S. Ct. 733, 741 (2011).

The Supreme Court further admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture,". Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

14

*Premo,* 131 S. Ct. at 741-42 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo,* 131 S. Ct. at 743 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have

15

been rational under the circumstances.'" *Pilla v. U.S.*, 668 F. 3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 130 S. Ct. at 1485).

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d at 750.  Petitioner was facing up to life in prison on the original first-degree criminal sexual conduct charges.  Trial counsel was able to negotiate a plea agreement with the prosecutor that permitted petitioner to plead guilty to one charge, with the dismissal of two additional first-degree criminal sexual conduct charges and the habitual offender charge.  Defense counsel also negotiated a sentencing agreement of fifteen to thirty years.

The evidence of petitioner's guilt to the original first-degree criminal sexual conduct charges was substantial.  Although petitioner claims that a sexual assault kit was not performed on the victim and there was no DNA evidence linking him to this case, the Court notes that in addition to the victim's allegations that petitioner had sexually assaulted her, the prosecution had been granted permission by the trial judge to call petitioner's biological daughter to testify pursuant to M.R.E. 404(b) that petitioner had sexually assaulted her when she was a young child.  Had petitioner gone to trial, there was a good likelihood that he would have been convicted and faced a much greater prison sentence, particularly if he had also been convicted as an habitual offender. Under the circumstances, trial counsel's advice to plead guilty to one count of first-

16

degree criminal sexual conduct with a sentence agreement of fifteen to thirty years was a reasonable strategy that defeats petitioner's claim. *See Bonior v. Conerly,* 416 Fed. Appx. 475, 479 (6th Cir. 2010). Petitioner has failed to show that trial counsel was ineffective in advising him to plead guilty.

Petitioner lastly claims that trial counsel was ineffective for failing to make arguments on his behalf with respect to the motion to withdraw the guilty plea. This Court has already determined that petitioner knowingly and intelligently pleaded guilty. In light of the fact that petitioner's plea was knowingly and voluntarily made, a challenge to the validity of petitioner's guilty plea would not have prevailed, and in fact, did not, therefore, counsel was not ineffective in failing to challenge the voluntariness of petitioner's guilty plea. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The sentencing claim.**

Petitioner next contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt when scoring his sentencing guidelines.

In *Blakely v. Washington*, 542 U.S. 296 (2004), the U.S. Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi*

17

*v. N.J.*, 530 U.S. 466, 490 (2000)).

Petitioner is not entitled to habeas relief on his claim. *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence within a minimum and maximum sentence. *See People v. Claypool*, 470 Mich. 715, 730, n. 14, 684 N.W.2d 278 (Mich. 2004); *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778 (Mich. 2006)(both citing M.C.L.A. 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set a minimum sentence." *Drohan*, 475 Mich. at 161. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255, n. 7, 666 N.W.2d 231 (Mich. 2003) (citing M.C.L.A. 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *Claypool*, 470 Mich. at 730. Therefore, Michigan's indeterminate sentencing scheme is unaffected by the U.S. Supreme Court's holding in *Blakely*. *Drohan*, 475 Mich. at 164. [1]

The holding in *Blakely* is inapplicable to petitioner's sentence. Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the

---

[1] Moreover, under Michigan law, where the maximum sentence for a crime is life imprisonment, as is the case with the first-degree criminal sexual conduct charge that petitioner was convicted of, a jury verdict in such a case would authorize a life sentence, thus, any sentence would be within the range authorized by that verdict. Therefore, a "trial court may utilize judicially ascertained facts to sentence a defendant to a term up to life imprisonment when life is the maximum sentence." *Drohan,* 475 Mich. at 162, n. 14.

18

province of the jury.  *Blakely*, 542 U.S. at 304-05, 308-09.  The Supreme Court clarified

this in *Cunningham v. California*, 549 U.S. 270 (2007), when the Supreme Court

explained that states may retain determinate sentencing by requiring the jury "to find any

fact necessary to the imposition of an elevated sentence" or by allowing judges "to

exercise broad discretion . . . within a statutory range, which everyone agrees, encounters

no Sixth Amendment shoal." *Id.* at 294. (quoting *United States v. Booker*, 543 U.S. 220,

233 (2005)); *See also Harris v. United States*, 536 U.S. 545, 565 (2002)("[w]hether

chosen by the judge or the legislature, the facts guiding judicial discretion below the

statutory maximum need not be alleged in the indictment, submitted to the jury, or

proved beyond a reasonable doubt" and the judge "may impose the minimum, the

maximum, or any other sentence within the range without seeking further authorization

from those [grand and petit] juries-and without contradicting *Apprendi*."), and *Id.* at

569-70 (Breyer, J., concurring)(agreeing that "*Apprendi* does not apply to mandatory

minimums.").

     The holdings in *Apprendi* and *Blakely* therefore do not apply to a judge's

factfinding that increases a minimum sentence so long as the sentence does not exceed

the applicable statutory maximum. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th

Cir. 2009); *See also Montes v. Trombley,* 599 F.3d 490, 495 (6th Cir. 2010)(the

*Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond

the prescribed statutory maximum to be submitted to a jury and proved beyond a

19

reasonable doubt does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing).  As noted by the Sixth Circuit, "[T]he Sixth Amendment gives a criminal defendant the right to have a jury find any fact that increases the *maximum* sentence the defendant faces, not any fact that increases the *minimum* sentence." *Arias v. Hudson*, 589 F.3d 315, 317 (6th Cir. 2009)(citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986))(emphasis original).  Indeed, "[B]y clarifying that minimum sentences fall outside *Apprendi's* scope, *Harris* forecloses [petitioner's] claim." *Chontos,* 585 F. 3d at 1002.  The Sixth Amendment jury trial right merely "ensure[s] that the defendant 'will never get more punishment than he bargained for when he did the crime'"; it does "not promise that he will receive 'anything less' than that." *Id.* (quoting *Harris*, 536 U.S. at 566 (quoting *Apprendi*, 530 U.S. at 498)(Scalia, J., concurring)).

When petitioner violated the first-degree criminal sexual conduct statute, he bargained that if a jury found him guilty, that he could face up to life in prison. Therefore, "regardless of the ways that judicial factfinding and Michigan's guidelines affected his minimum sentence," petitioner "got no more than he bargained for." *Chontos,* 585 F.3d 1002.  Because Michigan's sentencing laws create an indeterminate-sentencing scheme, it does not violate petitioner's due-process rights or

20

his right to a jury trial. *Montes,* 599 F. 3d at 497.  Petitioner is not entitled to habeas relief on any *Blakely* claim. *Id.*

Petitioner also appears to argue that trial counsel was ineffective for failing to object to the scoring of the sentencing guidelines.  Petitioner, however, was sentenced to fifteen to thirty years in prison in conformity with the plea and sentencing agreement.  In light of the fact that the trial court sentenced petitioner to the sentence that he agreed upon as part of the plea and sentence bargain, petitioner is unable to establish that counsel was ineffective for failing to object to scoring of the sentencing guidelines. *See Whitaker v. U.S.,* 186 Fed. Appx. 571, 573-74 (6th Cir. 2006).  Petitioner is not entitled to habeas relief on his second claim.

### C.  The reply brief.

In his reply brief, petitioner for the first time appears to be raising additional claims that were not raised in his initial habeas petition, nor raised in his appeal before the Michigan appellate courts, particularly several ineffective assistance of appellate counsel claims.  A traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).  "[A] court cannot consider new issues raised in a traverse or reply to the State's answer." *Id.*  Because these claims are being presented for the first time in petitioner's reply brief, rather than in his habeas

petition, this Court declines to address these claims, because they are not properly before this Court. *See Murphy v. Ohio*, 551 F. 3d 485, 502 (6th Cir. 2009); *See also Tyler v. Mitchell,* 416 F. 3d 500, 504 (6th Cir. 2005).

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims.  The Court will also deny

22

petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See*

*Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in*

*forma pauperis.*

s/John Corbett O'Meara
United States District Judge

Date:  December 20, 2012

I hereby certify that a copy of the foregoing document was served upon the parties
of record on this date, December 20, 2012, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager